MARY C. CORPORON #734
Attorney at Law
CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City, Utah 84111
Telephone: (801) 323-5000
Facsimile: (801) 355-3472

*Attorney for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>-vs-<br><br>ISRAEL LUIS GONZALEZ<br><br>    Defendant. | MEMORANDUM<br><br>Case No.  1:22-CR-054<br><br>Judge David Sam |

Defendant submits the following Memorandum in support of his motion:

**FACTS OF CASE**

Defendant is charged in Count 1 with Conspiracy to Travel Interstate with Intent to Engage in the Business of Dealing Firearms without a license, in Count 2 with Conspiracy to Commit Money Laundering, in Counts 3 and 4 with False Statement During Acquisition of Firearms, in Counts 5 and 6 with False Statement During Acquisition of Firearms, and Count 7 with Felon in Possession of Firearms and Ammunition.

The recent case *New York State Rifle & Pistol Association, Inc. v. Bruen* establishes a new constitutional test for firearm restrictions at a state and federal level.  Based on those new

holdings the statutes under which Mr. Gonzalez is charged are unconstitutional facially and as applied to Mr. Gonzalez.

## LEGAL ANALYSIS

In *New York State Rifle & Pistol Association, Inc. v. Bruen*, the Supreme Court held that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." 142 S.Ct. 2111, 2126 (2022). In order to justify the constitutionality of a regulation, the government "must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* The Court, in keeping with its previous decision in *District of Columbia v. Heller*, thus created a new two-step test to determine whether or not a statute regulating firearms should be found unconstitutional. *Id.* (The Court then applied this test to the New York regulation.)

The first step for analysis of the New York law was rather straightforward. The petitioners there were clearly part of "the people" that the Second Amendment protects. *Id.* The Court further determined that the plain text of the Second Amendment protects the right to bear arms both inside and outside the home, simply because nothing in the text of the Second Amendment draws a distinction between the home and public spaces with respect to the right to keep and bear arms. *Id.*

Therefore, the Defendant, Mr. Gonzales, has a personal liberty interest in his Second Amendment rights, and he is part of "the people" protected by that Amendment. Moreover, his said rights apply outside his home to all his activities.

The second step for analysis of the New York law required the government to show that New York's "proper-cause" requirement in the statute was consistent with the United States' historical tradition of firearm regulation. *Id.* at 2119. The Court determined that the historical sources, which ranged from the late 1200s to the early 1900s, did not meet that burden because "not all history is created equal." *Id.* Some sources were too attenuated from the founding of our Nation to indicate that the founders would have relied on them to create the Constitution. *Id.* Additionally, the Court found that three colonial regulations were insufficient to "show a tradition of public-carry regulation" and were too dissimilar from the New York law at issue. *Id.* The Court also declared that all of the public-carry restrictions that the government cited post-Second Amendment ratification, from common-law offenses to statutory prohibitions to surety statutes, did not impose a "substantial burden on public carry analogous to that imposed by New York's restrictive licensing regime." *Id.* at 2120. Finally, the Court stated that "late 19th-century evidence cannot provide much insight into the meaning of the Second Amendment when it contradicts earlier evidence," thus invalidating the government's evidence on that front as well. *Id.*

The Court held that New York's proper-cause requirement in its concealed-carry licensing scheme violated the Fourteenth Amendment by preventing citizens from exercising their Second Amendment right to keep and bear arms in public for self-defense. *Id.* at 2117.

## ANALYSIS

### I. How Should Courts Apply *Bruen*?

At step one of the new *Bruen* test, courts must ask whether the plain text of the Second Amendment covers an individual's conduct.  f it does not, the challenger of the law loses. If it does, then the Constitution shall presumptively protect that conduct.

At step two, the burden shifts to the government, who must justify its regulation by demonstrating that its proposed regulation is consistent with the United States' historical tradition of firearm regulations. This step requires the government to show that, as of 1791 (when the Second Amendment was ratified), there was a robust tradition of regulations that are relatively similar to the challenged regulation.

### A. *Guiding Principles*

This new reliance on historical conduct to determine the constitutionality of present-day firearm regulations presents interpretation issues for courts in the future. The Court presented a few guiding principles that courts will likely use in determining whether a challenged regulation is constitutional.

First, when a challenged regulation addresses "a general societal problem that has persisted since the 18th century," evidence suggesting unconstitutionality includes (1) the lack of a "distinctly similar" historical regulation addressing that problem, and (2) the decision of earlier generations to address the problem through "materially different means." *Id.* at 2131.

Second, cases implicating what would be considered "unprecedented societal concerns or dramatic technological changes" require a more nuanced approach. *Id.* at 2132. Although the Second Amendment's meaning "is fixed according to the understandings of those who ratified it, the Constitution can, and must, apply to circumstances beyond those the Founders specifically anticipated." *Id.*

Third, when confronted with "modern regulations that were unimaginable at the founding," the correct "historical inquiry" will "often involve reasoning by analogy." *Id.* Courts should ask whether "a historical regulation" and "a distinctly modern firearm regulation" are "relevantly similar." *Id.* A modern regulation will likely pass this test as long as it is an

"analogue" to a well-established historical regulation; however, the regulation need not be a "twin" or a "dead ringer." *Id.* at 2132–33.

Fourth, without providing "an exhaustive survey of the features that render regulations relevantly similar," *Bruen* identified "at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* The test is thus articulated as "whether modern and historical regulations impose a comparable burden on the right of armed self-defense [*how*] and whether that burden is comparably justified [*why*] are central considerations when engaging in an analogical inquiry." *Id.* at 2133 (emphasis and parentheses added).

### B. *Additional Considerations*

The Court provided additional considerations for courts who will be applying the *Bruen* test on other firearm regulations in the future. For example, the Court stated that courts do not need to conduct their own historical research but may base their opinions instead on the information presented to them. *Id.* at 2030, note 6. Additionally, courts may consider "historical precedent from before, during, and even after the founding" to investigate whether a firearms regulation would have been understood to be permissible when the Second Amendment was ratified. *Id.* at 2132–33 (cleaned up). However, the Court cautioned that the further back a law is from the ratification date, the less relevant it is, especially if it contradicts evidence from the 1791 period. *Id.* at 2137. Further, the Court stated that the history of any analogous regulations must be robust—that is, there must be something approaching a "consensus" that a certain type of conduct with relation to a firearm was broadly prohibited—in order to sustain a law burdening Second Amendment conduct. *Id.* at 2146–47. Finally, the Court emphasized that any "tie goes to the runner"—that is, the firearm possessor. *Id.* at 2141, note 11. This means that if there are

"multiple plausible interpretations" of a historical statute, courts should tip the balance in the favor of "the one that is more consistent with the Second Amendment's command." *Id.*

## II. Applicability to Mr. Gonzalez's Case

Mr. Gonzalez is charged under the following federal statutes:

(1) 18 U.S.C. §§ 371 and 924(n)

    a. Charged with: Conspiracy to Travel Interstate with Intent to Engage in the Business of Dealing Firearms Without a License (Count I)

(2) 18 U.S.C. § 1956(h)

    b. Charged with: Conspiracy to Commit Money Laundering (Count II)

(3) 18 U.S.C. § 922(a)(6)

    c. Charged with: False Statement During Acquisition of Firearms (Counts III and IV)]

### A. *Are the Federal Statutes Unconstitutional as Applied to Mr. Gonzalez?*

Each federal statute must be analyzed under both parts of the new *Bruen* test in order to challenge it as unconstitutional. For each statute, he must show that (1) the Second Amendment covers Mr. Gonzalez's conduct, and (2) the federal regulation is inconsistent with the United States' historical tradition of firearm regulation in order to prevail. Defendant asserts that under all statutes, *18 U.S.C §§ 371 and 924(n), 18 U.S.C. § 1956(h), and 18 U.S.C. § 922(a)(6).* The statutes charged in this case do not pass constitutional muster. There were no restrictions at the time the Second Amendment was ratified telling citizens they could not cross state lines to deal in firearms. There are no known restrictions requiring a license to deal in firearms, at the time of ratification of the Second Amendment. There were no laws requiring applications to acquire firearms, and false statements thereon.

## CONCLUSION

Accordingly the prosecution of Defendant, Mr. Gonzales, must be dismissed as unconstitutional.

DATED this 7th day of October, 2022.

        /s/ *Mary C. Corporon*
        MARY C. CORPORON
        Attorney at Law

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of October, 2022, I filed a true and correct copy of the foregoing with the Clerk of the Court using CM/ECF system, which sent notification of such filing to all those registered with CM/ECF to receive notices in the instant case.

        */s/ Michelle Beddoes Yeates*